IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cr-301

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| ) | ORDER |
|         vs. ) | |
| ) | |
| ALVIN LEE EDGE, ) | |
|     Defendant. ) | |

**THIS MATTER** is before the Court upon Defendant's Notice of Constitutional Claim. (Doc. No. 23) filed on the eve of trial.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On September 21, 2011, the Grand Jury for the Western District of North Carolina returned a one-count indictment against Defendant Alvin Lee Edge ("Defendant"), charging him with possession of a firearm after he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1). The government alleges[1] that Defendant possessed a .22 caliber rifle sometime between December 2010 and February 4, 2011. (Doc. No. 1). Charlotte-Mecklenburg Police Department ("CMPD") officers received information that Defendant had outstanding warrants unrelated to the facts of this case. (Doc. No. 19 at 2). On February 4, 2011, his wife, Melody Edge, informed them that she had dropped Defendant off at 8513 Barncliff Road. (Id.). Mrs. Edge further advised the officers that Defendant was in possession of a rifle when she dropped him off. Officers then went to the residence and arrested Defendant. A search of a silver-colored

---

[1] In a motion to dismiss, facts are taken in light most favorable to the government as the non-moving party. See United States v. Mills, 995 F.2d 480, 489 (4th Cir. 1993) (applying standard when indictment is challenged).

SUV in the garage turned up a .22 caliber rifle in the front passenger seat. (Id.). Forensic analysis of this rifle revealed that Defendant's DNA could not be excluded from a swabbing taken from the trigger of the weapon. (Id.).

The government also intends to offer evidence that Defendant possessed the .22 caliber rifle in question during a shooting on January 23, 2011. (Id.). Junious Brandt ("Brandt") reports that he was involved in an altercation with Defendant early that day. (Id. at 2-3). Brandt took Defendant's actions as a violent threat against him. (Id. at 3). Late that evening, someone pounded on Brandt's door. (Id.). Almost immediately thereafter, Brandt heard gunfire. (Id.). Brandt crawled to the window and observed a silver-colored SUV driving away. (Id.). The following morning, Brandt discovered that his vehicle's windshield had been shot. (Id.). Two shell casings were found nearby. (Id.). On January 25, 2011, Brandt observed a silver-colored SUV repeatedly drive past his home. (Id.). Brandt wrote down the license plate number and reported it to the police. (Id.). The license plate matched that belonging to the silver-colored SUV found at 8513 Barncliff Road with the .22 caliber rifle inside. (Id.). Forensic analysis of the shell casings found at Brandt's home confirmed that they were fired from the rifle found in the silver-colored SUV. (Id.).

The Government has provided the Court evidence of five previous crimes the Defendant was convicted of committing. On November 4, 1998, Defendant was convicted of possessing a stolen automobile. On February 29, 2000, Defendant was convicted of robbery and possession of a counterfeit controlled substance with intent to distribute. On October 30, 2002, Defendant was convicted of second degree arson. On August 27, 2009, Defendant was convicted of possessing another stolen vehicle. On October 26, 2009, Defendant was convicted of two counts of felony possession of cocaine.

Despite stipulating that he has been convicted of a felony and has not had his civil rights restored, (Doc. No. 17), Defendant argues that his rights have been restored automatically through the passage of time since his 2009 convictions, (Doc. No. 23). The Court interprets Defendant's "Notice" as a motion to dismiss the indictment based on a facial and as applied challenge to the constitutionality of 922(g)(1) as an infringement of his second amendment right to bear arms.

## II. DISCUSSION

### A. Constitutionality of 18 U.S.C. § 922(g)(1)

18 U.S.C. § 922(g)(1) prohibits firearms possession by persons who have been convicted of an offense punishable by a term of imprisonment exceeding one year. The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In District of Columbia v. Heller, the Supreme Court upheld an individual's right to keep and bear arms under the Second Amendment, recognizing that the "core" of the Second Amendment's protections was "the right of law-abiding, responsible citizens to use arms in the defense of hearth and home." 554 U.S. 570, 635 (2008).

#### 1. Facial Constitutionality of § 922(g)(1)

Considering a facial constitutionality challenge to § 922(g)(9), the Fourth Circuit outlined a two-part standard for deciding post-Heller Second Amendment claims. See United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010). First, a court must determine "'whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee' . . . at the time of ratification." Id. (quoting United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)). If it does not, the law is constitutional. Id.

3

"However, if the challenged law does not impose a burden on conduct falling within the scope of the Second Amendment's guarantee as historically understood," then a court proceeds to the second prong and applies "the appropriate form of means-end scrutiny." United States v. Staten, No. 10-5318, 2011 WL 6016976 (4th Cir. Dec. 5, 2011) (citing Chester, 628 F.3d at 680). While noting that Heller only rejected rational basis as the appropriate level of scrutiny, the Fourth Circuit held that a Second Amendment claim outside the "core right identified in Heller," defined as "the right of every *law-abiding, responsible* citizen to possess and carry a weapon for self-defense," warrants intermediate scrutiny. Chester, 628 F.3d at 683. (emphasis in original).

Like other constitutional rights, there are limitations on the Second Amendment right as identified in Heller. 554 U.S. at 626. Notably, the Supreme Court has twice stated that its decision in Heller should not be read "to cast doubt on longstanding prohibitions" such as "the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." See Heller, 554 U.S. at 626-27; McDonald v. City of Chicago, 130 S. Ct. 3020, 3047 (2010). The Heller Court defined this non-exhaustive, exemplary list of prohibitions as "presumptively lawful regulatory measures." Id. As such, § 922(g)(1) falls within the list of "presumptively lawful regulatory measures" identified in Heller.

However, the Fourth Circuit noted that Heller's "presumptively lawful regulatory measures" language and illustrative list of constitutional "long-standing prohibitions" are subject to two possible interpretations. Chester, 628 F.3d at 679 ("It is unclear to us whether Heller was suggesting that 'longstanding prohibitions' such as these were historically understood to be valid limitations on the right to bear arms or did not violate the Second Amendment for some other reason."). Nonetheless, either of these interpretations is constitutionally valid under the Fourth

4

Circuit's two-step standard for analyzing Second Amendment claims.

First, if the "presumptively lawful regulatory measures" are considered to be "historical limitations," they regulate conduct not within the Second Amendment's protections. Id. at 680. Accordingly, as these regulations would not burden "conduct within the Second Amendment as historically understood," they would be valid under the first prong of the Chester standard. Id. Second, even if the listed regulations are not considered to be "historical limitations" which burden conduct protected by the Second Amendment, they still could be viewed as "presumptively lawful regulatory measures" as they are "valid on their face under any level of means-end scrutiny applied." Id. at 679. Thus, the regulations would presumably pass the second prong of the standard's application of the "appropriate form of means-end scrutiny." Id. at 680. Therefore, under either of these two interpretations, § 922(g)(1), a "presumptively lawful regulatory measure," is facially constitutional. See also United States v. Moore, No. 10-4474, 2012 WL 208041, at *3 (4th Cir. Jan. 25, 2012) ("Since clearly there are cases where felon firearm possession is constitutionally limited, § 922(g)(1) survives a facial challenge. Thus, we have no difficulty in concluding that § 922(g)(1) is constitutionally valid on its face.") (internal citations omitted)

2. As Applied Constitutionality of § 922(g)(1)

Moreover, regardless of whether or not § 922(g)(1) is interpreted to be a "historical limitation" on the right of felons to possess firearms, § 922(g)(1) is constitutional as applied to Defendant. Applying the first part of the Chester standard, the Court must determine whether § 922(g)(1) "imposes a burden on conduct falling within the scope of the Second Amendment's guarantee' . . . at the time of ratification." Id. at 680 (quoting Marzzarella, 614 F.3d at 89). It is

undisputed that § 922(g)(1) is a categorical ban on all firearm possession for certain persons. Id. ("Section 922(g)(9), like the felon-dispossession provision set forth in § 922(g)(1), permanently disarms an entire category of persons."). Accordingly, for such categorical bans, the initial question is "whether a person, rather than the person's conduct, is unprotected by the Second Amendment." Id. The Fourth Circuit has previously stated that historical evidence of whether convicted felons were prohibited from possessing firearms at the time of the Second Amendment's ratification is inconclusive. Id. ("[I]t appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons.").

As such, if the inconclusive historical evidence renders Defendant's Second Amendment rights intact, the Court must proceed to the second part of the Chester standard and apply some form of heightened scrutiny to his as-applied challenge to § 922(g)(1). Id. at 681-82. Rational basis review is inappropriate here. See Heller, 554 U.S. at 628 n.27. The Fourth Circuit, in addressing a category of persons (domestic violence misdemeanants) who were not within the exemplary list of those persons as to whom regulation is presumptively constitutional, applied the intermediate scrutiny standard of review. See Chester, 628 F.3d at 683 (dismissing defendant's strict scrutiny argument and holding that a domestic violence misdemeanant was outside the "core right identified in Heller–the right of every *law-abiding, responsible* citizen to possess and carry a weapon for self-defense," by virtue of his criminal history of domestic violence (emphasis in original)); see also United States v. Pruess, 416 F. App'x 274, 275 (4th Cir. 2011) ("In applying this prong of the analysis to a regulation that prohibits the possession of firearms by felons, a district court should apply intermediate scrutiny to determine whether 'there is a reasonable fit between the challenged regulation and a substantial government

objective.'" (quoting Chester, 628 F.3d at 683)); United States v. Williams, 616 F.3d 685, 692 (7th Cir. 2010) (using intermediate scrutiny to analyze an as-applied challenge to § 922(g)(1)); United States v. Oppedisano, No. 09-CR-0305, 2010 WL 4961663 (E.D.N.Y. November 30, 2010) (same). Likewise, Defendant is not within the "core right identified in Heller" by virtue of his alleged involvement in the shooting at Brandt's home and his lengthy criminal history. Therefore, intermediate scrutiny is appropriate here.

Under intermediate scrutiny, the Government must prove that "there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." Id. at 683. It is well-established that protecting the safety and lives of citizens and preventing crime is a substantial government objective. See United States v. Solerno, 481 U.S. 739, 750, 754-55 (1987). Additionally, Congress's interest in protecting "the safety and indeed the lives of its citizens" is not merely "substantial" but "compelling." United States v. Salerno, 481 U.S. 739, 750, 754-55 (1987). For at least 70 years, Congress has sought to protect this interest by preventing firearms from falling into dangerous hands. Cf. Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 82-83 (1946) ("the legislature may choose not to take the chance that human life will be lost"). To achieve this task, Congress may need to make "predictive judgments" about the risk of dangerous behavior, and such judgments are entitled to "substantial deference" by the courts. Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 665 (1994). Further, the primary role in making such judgments properly falls to Congress, not the courts, because Congress is "far better equipped than the judiciary" to collect, weigh, and evaluate the relevant evidence, and to formulate appropriate firearms policy in response. Id. at 665-66. The Court finds that the government has established that reducing gun violence is a substantial government objective.

With regard to the "reasonable fit" portion of intermediate scrutiny, the government need not prove that § 922(g)(1) is the least intrusive means of reducing gun violence or that there be no burden whatsoever on Defendant's "assumed <u>arguendo</u> right under the Second Amendment to keep and bear arms in his home for self-defense." <u>Staten</u>, 2011 WL 6016976, at *6 (emphasis in original) (citing <u>United States v. Masciandaro</u>, 638 F.3d 458, 474 (4th Cir. 2011) ("intermediate scrutiny does not require that a regulation be the least intrusive means of achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question"). "In other words, the fit needs to be reasonable; a perfect fit is not required." <u>Staten</u>, 2011 WL 6016976, at *6. The Gun Control Act of 1968, of which § 922(g)(1) is a part, sought to "keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" <u>United States v. Lunsford</u>, No. 2:10-cr-182, 2011 WL 145195, at *6 (quoting <u>United States v. Small</u>, 544 U.S. 385, 393 (2005)).

Defendant is alleged to be a convicted felon with a lengthy criminal history. Further, substantial evidence connects Defendant to a threatening altercation with Brandt, followed by a shooting at Brandt's home, and then drive-by surveillance of Brandt's home. Section § 922(g)(1)'s permanent disarmament of felons, such as Defendant, is a reasonable means of achieving the government's objective of protecting the safety of citizens and deterring future violence and crime. Accordingly, § 922(g)(1) survives intermediate scrutiny and is constitutional as applied to Defendant.

### 3. North Carolina Law

Defendant argues that "North Carolina's ban on possession of guns by a felon violates the North Carolina Constitution's right to bear arms provisions." (Doc. No. 23). Defendant believes that this alleged invalidity of state law "should also lift the federal ban on gun

8

possession by that felon." (Id.). Defendant cites 18 U.S.C. § 921(20) as an inverse supremacy clause, elevating state law above federal law, to support this argument. (Id.).

The North Carolina cases Defendant cites do not invalidate North Carolina's prohibition on firearm possession by convicted felons. See Britt v. North Carolina, 681 S.E.2d 320, 323 (N.C. 2009); Baysden v. North Carolina, 718 S.E.2d 699, 705 (N.C. Ct. App. 2011). Further, Defendant's discussion of North Carolina's felon in possession law is misplaced. 18 U.S.C. § 921(20) pertains to whether a previous conviction is punishable by a year's imprisonment under state law. The validity of North Carolina's felon in possession law under the North Carolina Constitution is irrelevant. Defendant is charged with a violation of 18 U.S.C. § 922(g)(1). The Fourth Circuit's decisions in Moore and Chester, interpreting this statute, are controlling. As discussed above, Defendant's challenge fails under federal law.

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED that** Defendant's Notice of Constitutional Claim, (Doc. No. 23), is **DENIED**.

Signed: February 8, 2012

Robert J. Conrad, Jr.
Chief United States District Judge